UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES SEILER, JR.,

        Plaintiff,

       v.                                    **DECISION AND ORDER**
                                                        19-CV-602S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff James Seiler, Jr., brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income benefits under Title XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his application with the Social Security Administration on January 19, 2016.  Plaintiff alleged disability beginning December 1, 2004, due to bipolar disorder, generalized anxiety disorder, unspecified disruptive disorder, and conduct disorder.  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On May 14, 2018, ALJ Gregory Moldafsky held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Valerie Allen appeared and testified.  (R.[1] at 32-58, 10.)  At the time of the hearing, Plaintiff was 37 years old, he had a seventh-grade education and no past relevant work.

---

[1]Citations to the underlying administrative record are designated as "R."

4.      The ALJ considered the case *de novo* and, on July 3, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[2]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 11, 13.)  Plaintiff filed a response on March 9, 2020 (Docket No. 14), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **granted**, and Defendant's motion is **denied**.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2]The ALJ's July 3, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the

3

> fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

      10.    Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

      11.    The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity and had no past relevant work.  (R. at 12, 18.)  At step two, the ALJ found that Plaintiff has the following severe impairment:  bipolar disorder, generalized anxiety disorder, unspecified disruptive disorder, and conduct disorder.  Id. at 12.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 13.

12. Plaintiff applied on January 19, 2016, and the ALJ rendered his decision on July 3, 2018 (R. at 10). The revised medical criteria for evaluating mental disorders came into effect on January 17, 2017, and applied to decisions rendered on and after that date, Genua v. Comm'r, No. 18CV423, 2019 WL 5691827, at *4 (W.D.N.Y. Nov. 4, 2019) (Roemer, Mag. J.); 20 C.F.R. Part 404, Subpt. P, App. 1 (effective Jan. 17, 2017). The consultative psychological evaluation, however, was rendered on March 22, 2016, and based upon the then-existing Social Security standard (R. at 254).

13. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, but Plaintiff is limited to simple, routine, repetitive tasks in a work environment that is not fast paced or has strict production quotas; limited to no more than incidental interaction with the general public and no more than occasional interaction with co-workers and supervisors; limited to jobs where job responsibilities are performed without close teamwork, tandem work, or over-the-shoulder supervision; limited to no more than simple work-related decision. (R. at 14.)

14. At step four, the ALJ found Plaintiff did not perform any past relevant work. (R. at 18.) At step five, the ALJ adopted the opinion of the vocational expert that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, identifying such occupations as hand packager (medium exertion work), housekeeping cleaner (light work), and electronics worker (light work). (R. at 18-19.) Accordingly, the ALJ found that Plaintiff was not disabled. (Id. at 19.)

15. Plaintiff argues that the RFC determination is not supported by substantial evidence because the psychiatric review technique applied by the ALJ at step three was

5

not supported by substantial evidence. He also contends that the ALJ erred in concluding that he could have occasional interaction with a supervisor despite his severe conduct disorder. For the reasons that follow, Plaintiff's argument that the ALJ impermissibly relied upon lay opinion is **adopted**.

16. The psychiatric review technique is the revised standard for evaluating mental disorders and is used to determine whether a claimant meets or equals a mental impairment listing (No. 13-1, Def. Memo. at 16). The ALJ found Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (R. at 13-14).

17. Plaintiff argues that the record should have contained a psychological or psychiatric evaluation of Plaintiff for two of the domains; without such an evaluation, the ALJ did not have guidance for determining Plaintiff's understanding, remembering, or applying information and adapting and managing oneself (No. 11-1, Pl. Memo. at 8, 9).

18. On understanding, remembering, or applying information, Plaintiff described his education; he testified that he did not complete the eighth grade and was in special education class when he did attend. (R. at 183, 38.) Plaintiff could not read (R. at 40) and was tested and found to have a third grade reading level and fourth grade knowledge level at the age of fifteen (R. at 167). The disability report stated that Plaintiff had completed the eighth grade (R. at 183). That same psychological testing in 1995 found that Plaintiff had reading equivalent of an eighth grader (R. at 167).

19. As for adapting and managing himself, Plaintiff notes that the ALJ found that Plaintiff had a severe impairment of disruptive impulse control and conduct disorder

(R. at 12). Plaintiff quoted the American Psychiatric Association's definition of these disorders as involving "problems concerning the self-control of emotions and behavior" (No. 11-1, Pl. Memo. at 10, citing Commonwealth of Va. Comm'n on Youth website (citation omitted)), see Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"), 469-71, 480 (5th ed. 2013). Plaintiff argues that the ALJ erred in not seeking a medical opinion "to determine the extent these conditions interfered with his ability to Adapt and Manage" (No. 11-1, Pl. Memo. at 10-11).

  20. Defendant disagrees, stating that the Commissioner (and not psychiatrist or psychologist) determines the degree a claimant's impairments affect the Paragraph B criteria (No. 13-1, Def. Memo. at 16), 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b); 20 C.F.R. § 416.920a(e).

  21. Plaintiff replies that the ALJ erred in relying upon his lay opinion of the degree Plaintiff met the Paragraph B criteria, concluding that each was no more than moderate based upon the ALJ's assessment of Plaintiff's activities of daily living (No. 14, Pl. Reply at 1-2).

  22. Plaintiff cites two cases in which the medical standard changed and the ALJ there either did not seek medical opinions or obtain an opinion under the new standard (No. 11-1, Pl. Memo. at 9-11; No. 14, Pl. Reply at 2; cf. No. 13-1, Def. Memo. at 24). Genua, supra, 2019 WL 5691827, at *5; Mattiolai v. Berryhill, 17CV1409, 2018 WL 5669163, at *4 (D. Conn. Nov. 1, 2018) (ALJ did not have any medical professional review the medical record under Paragraph B criteria). In Genua, the ALJ relied upon that plaintiff's testimony and her treatment history for finding as to two functional domains without citing a medical opinion. Magistrate Judge Michael Roemer declared that he

could not "determine whether the ALJ arbitrarily substituted his analysis of the medical record for that of a trained physician," 2019 WL 5691827, at *5 (citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)), to discern whether substantial evidence supported the ALJ's findings.

23. Although the criteria did change during the pendency of Plaintiff's application, the error here is the ALJ did not rely upon any psychological opinion in finding that Plaintiff had moderate Paragraph B criteria in the two alluded to domains. For understanding, remembering, or applying information, the ALJ said there were no mental status examinations to suggest any significant limitations and then rested on Plaintiff's testimony on his activities of daily living and the function report he completed to find moderate limitation (R. at 13, 42, 190-200). Plaintiff testified that he could perform little chores around the house, but he also said he busied himself "thinking about 100 different things that I can't complete one task" (R. at 42). While acknowledging this distractibility, the ALJ relied upon Plaintiff's written statement in the function report of tasks he can perform (R. at 13).

24. The ALJ also relied upon Plaintiff's testimony in finding that he had moderate limitation in adapting or managing himself (R. at 14, 190-200) and without reference to any psychological or medical evaluation. The ALJ then found that there was "no significant evidence" of Plaintiff not being able to control his behavior or maintain well-being in a work setting (R. at 14). This is despite Plaintiff not having any past relevant work experience (R. at 18) and having earned a total of approximately $2,200 in 2006, 2007, and 2017 and no other earnings since the onset date of December 2004 (R. at 12).

25. As in Genua, this Court cannot determine whether the ALJ arbitrarily substituted his analysis of the medical record for that of medical professionals. In the absence of a medical record, the ALJ relied upon Plaintiff's statements and testimony and deduced the degree he could function under the domains. **This is in error**.

26. Plaintiff next argues that the ALJ erred in finding that Plaintiff could work occasionally with supervisor despite his severe conduct disorder (No. 11-1, Pl. Memo. at 11). The ALJ found in the RFC that Plaintiff could have "no more than occasional interaction with co-workers and supervisor . . . . and limited to jobs where the job responsibilities are performed without close teamwork, tandem work, or over-the-shoulder supervision" (R. at 14).

27. Plaintiff argues that the ALJ found this despite finding he also had severe impairments for impulse control and conduct disorder (No. 11-1, Pl. Memo. at 11; R. at 12). Plaintiff contends that the ALJ's finding is untethered to the record, that he found Plaintiff was more limited than Dr. Zali (R. at 254, given great weight by the ALJ, R. at 17) and Dr. Tzetzo (R. at 66) but less limited than Plaintiff's treating nurse practitioner, Greis (R. at 397); the ALJ gave partial weight to NP Greis' opinion (R. at 17). (No. 11-1, Pl. Memo. at 12.)

28. The parties argue over the degree of interaction Plaintiff can have with supervisors, whether occasional or incidental. Plaintiff is correct that this difference is substantial because the vocational expert testified that a claimant who could interact only less than occasionally with supervisors that claimant would not be employable (R. at 55-56), rendering an opinion based upon a claimant like Plaintiff with an RFC that could "no more than occasional[ly] interact[] with coworkers and supervisors" (R. at 51-52, 14).

29.     Also as found above, the finding at step three on Plaintiff's mental disorders is suspect.  Given that the RFC is based upon this suspect finding at step three, the nuance differences between occasional and incidental or less than occasional interaction need to be revisited on remand.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      July 16, 2020
            Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge